When you're ready, counsel. Take as much time as you need. I'm ready if the court is your call. Can we start with the question that I asked you of the wrong case? As I read the record in this one, we do have a finding from the psychiatrist that he posed a danger. And your reaction was that you didn't agree with my characterization. So can you educate me as to why I'm wrong in reading that report? I can try, with a great deal of hope. Well, I won't read the list of the reasons. I'm just focusing here on the statement. Unfortunately, my copy is not very good. It's ER 89, and it's in the summary and conclusion paragraph. In my clinical judgment, he remains a danger to the community if released at this time. There's no question that the statement about danger is there, Your Honor. Our reading of the applicable rule requires the psychiatrist to say both, that he suffers from the present severe disturbance and a danger. This is only half of the finding that the statute and rule that were applicable or the policies that were applicable require. Hold it a second, Mr. Waxman. He gives him a diagnosis on axis one of pedophilia, opposite sex, and then the sub-axes, and finds he's a danger to the community. What more does the psychiatrist need to do to convince the board that it's not safe to release this guy? I believe, Your Honor, that what the diagnosis says, in and of itself, doesn't tell us that this is a present severe disturbance. To be sure. Pedophilia, opposite sex, coupled with a finding that his release would pose a danger to the community? Is it not adequate to support the board's decision in that regard? In his summary, he also tells us that he is making determined efforts to rehabilitate himself, that he has been disciplined free, that he has taken five or six hundred hours of substance abuse education. The problem the doctor sees is that he minimizes the severity of his crimes. Yes, he is prone to thinking errors, marked element of entitlement. And then when he says, I consider his prognosis to be quite guarded, as I read that, the doctor's saying, this guy's a danger, and I don't know that he's going to get much better. I cannot argue and do not argue anything about the finding of danger that's there. So why, from an ex post facto standpoint, couldn't the board, as it always has, I think, have looked at the psychiatrist evaluation and whatever else it had in its file about Mr. Everest's performance and conclude now is not the time to let him go? Let me try it this way, Your Honor. I think the law is clear that an ex post facto violation can arise from one of three sets of statute, official rule, or policy. What we're dealing with in this case is policy. And in response to your question, Judge Goodwin, in the last case, I think most applicable here, is the way in which the statute can set a ceiling, the rule can set another ceiling, and then the policy, as Mr. Bornstein described it from the Smith case, without discretion, sets another one. What the board had done during the relevant time for Mr. Everest's case was set a policy ceiling that within five or six years, the board and legislature corrected. There's no question that 1993, a change was made. There's no question, and we don't take on, that the Widener decision said that under the pre-'93 statute, the board always had the authority to go to the highest ceiling. The argument in the case is that the board had chosen, rightly or wrongly, to limit its authority by written rule and then to further limit it by policy. So this is sort of an analogy to the argument that states are free under the federal constitution to grant greater protection to privacy rights than perhaps the Fourth Amendment would recognize. I think that would be an apt analogy. So if that were the case, then Judge Goodwin was wrong, that in this case the policy trumps the statute? With respect to Judge Goodwin, I would say that. I've been wrong before and declared by a higher court than this. Well, I'm not a court and certainly not higher. Well, we've all shared in that. But as a matter of law, that seems odd to me. Well, it may be, but I think the Supreme Court told us in the Jones v. Garner case, and this court discussed it in Smith and the Third Circuit in the Mickens case that we submitted in the Rule 20HA letter, have all said that, that if an administrative entity such as a parole board uses the authority and discretion granted to it to set rules that provide more protection to parolees than the legislature said it could, it has that discretion. When it exercises that discretion, as was done in this case and the Brown case, then that becomes the relevant thing to look at for ex post facto purposes. I guess the problem with my argument and the same problem I was having with your colleague, Mr. Bornstein, is that turns the whole definition of discretion on its head. It's not discretionary anymore. Now it's mandatory based upon what you claim to be a more protective policy. And that can't be what discretion means. I'm not sure if we're using the word discretion in the same context. I'm not sure I'm understanding. The board retains discretion in Mr. Everett's case. Well, you're calling it discretion, but you're saying that because it has adopted this policy, it has none, that it has to let him go. No. It has several. It retains lots of discretion. First, it retained the discretion to set the date on which it would look at his release. It can look at the whole record and say, we'll look at your release tomorrow or we'll look at your release ten years from now. It has that discretion. And Judge Fletcher's question to Mr. Bornstein I think pointed out that if the psychologist comes in with a report that is not favorable, the board has discretion. The board limited itself in terms of its exercise of discretion on the individual cases in only one way. And that is, it said, if a doctor says X, then we must act. And that's where I'm having my problem. Then that no longer, to me, that doesn't sound like discretion anymore. That sounds to me like a statute, a rule, or a policy, whatever you want to call it, that says you shall do this in the face of whatever the psychiatrist says. And if the psychiatrist doesn't use the magic language, then you've got to let him go. No discretion. Which is precisely what all the record in this case and in the other cases shows. And in terms of the Rule 7. Let me make sure I understand. But I think Judge Tallman is saying that, let me think if I understand the implication of Judge Tallman's question. And that is to say, if indeed the board has adopted a rule or a practice and follows it as a matter of policy, but it has no discretion, well, that then under your view of the ex post facto rule is, well, that's a policy and they can't change it. I mean, they may not have had to have adopted this policy in the first place, because they could have construed the statute in various ways. But once they've adopted the policy that says once we have a diagnosis of a professional psychologist or psychiatrist that is not a danger, does not have a severe emotional disturbance, we have to let him go, that's the end of the matter. I think Judge Tallman is reading the policy correctly. With respect to Mr. Everest, that's the end of the matter. Yes, they can change it prospectively, which is the reason that we're here. The change being retrospective is the problem. If they're given the authority by the legislature as they understood they were to set the policy, and they set it stupidly, which the legislature eventually said they had done, the policy then gets changed. And for everyone who comes into the system post change, they can, you know, the sky's the limit. Review anything you want. So do they do that by saying, well, Mr. Everest, today is your lucky day. You just won the Oregon parole lottery and you get to go. But we are henceforth announcing in the Everest case, like we would in a published opinion, that for everybody else who comes before us, we're now changing the rule. Parole boards don't make decisions that way, do they, Mr. Watt? The parole board makes decisions on policy and is permitted to, I believe, as the Supreme Court, I'll refer back to Garner and the Third Circuit in Mickens and this court in Smith with respect to the federal board. Parole boards set policies in a number of ways. And when they do, they cannot change the policy and apply a harsher policy retrospectively. We've got a hand. Let's hear from you on rebuttal that you've used up the time. Thank you. May it please the Court, Carolyn Alexander for Respondent Stan Sersniak. If I just might begin by addressing some of the points that were raised in Mr. Wax's argument. First of all, to clarify, Widener does not require a diagnosis of present severe emotional disturbance. And Widener specifically says, we do not require those magic words. What Widener requires is a diagnosis. So in Mr. Everest's case, it was pedophilia. Does Widener require a professional diagnosis, however? Yes, it does. It's just Widener says we don't need the magic words. Exactly. That's correct, Your Honor. So in Mr. Everest's case, even if somehow the board had limited its discretion or its authority to deny release on parole, based solely on the psychological evaluation, it could have been his case. So would your position be that pedophilia is a severe emotional disturbance? It's a diagnosis upon which the board can then make its own finding of present severe emotional disturbance. And that's a good question, Judge Tallman. Widener also says that it is for the board to make the determination of present severe emotional disturbance, not the psychologist or psychiatrist. Now, this issue of policy, I think that word is used too loosely in this situation. There was no formal board policy. There was a few comments to the legislature by some board members, particularly Vern Fox, and there was an internal memorandum from the then board chair to the Department of Corrections. There was no formal policy. Was there a consistent practice? There is no evidence of that, Your Honor. Oh, come on, there's some evidence. No evidence is too strong. You might want to say there was no consistent practice and the evidence is inconclusive, but you can't say there's no evidence. Well, I'm not exactly sure what evidence of the practice is. I mean, Mr. Bornstein in the Brown case talks about newspaper articles and board members talking about the Cal Brown case and about the Russell O'Briensky case. I don't know if that rises to the level of evidence of a practice. Again, that's what some board members thought, but there's no evidence of what the board or that the board formally interpreted its discretion in the manner that Mr. Bornstein and Mr. Wax say they did during the relevant time frames for Mr. Brown, 1982, for Mr. Evers, 1987. That gets back to Judge Goodwin's discussion about the 93 amendment and I think also yours, Judge Fletcher. When in talking about the 93 amendment, again, all of the evidence supports their argument that the board interpreted its discretion in 1982 and 1987 based on what happened before the legislature and in this memo to the Department of Corrections in 1993. Again, that's simply the wrong evidence to support their argument. It may be that some board members thought that they were limited by the psych eval in 1993, but that doesn't tell us what the board thought in 1982 and 1987 and that's a deficiency in the proof in the state court and in the federal district court. That's the real crux of the whole case. The Court of Appeals found specifically that the board, in fact, did have the discretion to rely on the entire record during these relevant time frames. Again, that's a state law determination and the petitioners here simply can't overcome that state law finding. I might add also, in terms of this policy issue, in the Court of Appeals decision in Peek v. Thompson that's cited, I believe, in the blue brief, but certainly in the red brief as well, during a very limited period of time from 1989 to 1990, the board had a rule, an actual administrative rule, and the Court of Appeals in Peek said that during that time period when that rule was in effect, the board had limited its discretion in the way that the petitioners say it did here. For those inmates who fell within this window from May of 1989 to April of 1990 when this rule was in effect, in fact, the board did have to rely solely on the psych evaluation to make its parole release decision. However, the Court of Appeals in a number of other cases, Widener, God bless Pete Giblin, said the board did not limit its discretion at any other time period except that window. I think that addresses the issue of the policy and the rule and the statute. Certainly, if the board provocates a rule, the board is bound by that rule, and that's exactly what happened in Peek. But this informal, I wouldn't even call it a policy. Again, it's what some board members thought in 1993. That doesn't rise to the level of limiting discretion in the way that a rule does, the statute does as interpreted by the state courts. Also, in this case, Holland v. Jackson controls. The petitioner presented none of this evidence to the state courts. No legislative history, not the Santos Memorandum, nothing. So the state courts had no opportunity to look at this evidence and make a decision on petitioner's ex post facto claim. So it's really disingenuous to now say in the reply brief that the decision is a subterfuge to evade consideration of the federal issue when he never gave the state courts a chance to look at the issue. He simply didn't develop the factual basis of his claim in state court. Now Holland v. Jackson prevents consideration of that evidence now in federal court. Also, I would add on the section 2254E2 issue. For the first time, Mr. Everest argues that his exhibit should have been considered under Rule 7 and 2254E2 in the district court. He did not move for expansion of the record under Rule 7 in district court. He didn't respond to the state's arguments that his exhibits were barred by 2254E2. So he shouldn't be allowed now, and his argument shouldn't be considered now on those issues. Additionally, I would say too, and I had no time to say in the Brown case, but I think it applies in both cases. This issue of Rule 7 and whether habeas petitioners can offer evidence under Rule 7 when they don't meet the requirements of 2254E2. That issue has never been decided in any of the federal courts that I could find, but I would suggest that the rule shouldn't be interpreted to conflict with the statute. That, in fact, if habeas petitioners do not show due diligence under 2254E2, the district court, in fact, doesn't have the discretion to expand the record. The district court has discretion to expand the record under Rule 7 only if the petitioner meets the requirements of 2254E2 and the exhibits are relevant under Rule 7. I don't remember the history of the rule, but I suspect the rule existed before it was enacted in 1986. Long, long, long before. And I don't know that it's been amended since then. No, it has not, and that issue is starting to come up more frequently now. As the United States Supreme Court in this court has interpreted 2254E2, more and more habeas petitioners are using Rule 7. I expect that at some point, if not from this court, a decision will be made on that, but it does predate the rule by many, many years. I think in summing up, in both Mr. Brown's case and Mr. Edwards' case, neither petitioner has shown that 144125 is formally interpreted by the board or the courts as changed. They relied on the legislative history of the 1993 amendment and the Santos Memorandum to show that the board had a policy or a practice during the relevant time frames, and it simply doesn't show that. As I said, it's the wrong evidence. The state court decisions are binding on this court, and unless either petitioner can show that there was a subterfuge or that the state court decision frustrated consideration of the federal issue, which is the Mulaney v. Wilbur language, then I don't think that the state law findings can be discerned. Okay. Thank you. Thank you very much. Mr. Wax, would you like a minute? Thank you. First, Widener is not dispositive. It only deals with the statute. We are not arguing against Widener. We say it didn't reach the issues before this court. Second, in response to the factual issue in Mr. Evers' case, I heard Ms. Alexander's response, Judge Tallman, as a concession, that what is in the record in this case is a finding from which the board could make its finding. I did not hear her saying that it was sufficient under the old rule. Third, with respect to the last point, I think what she said was that the board would look at the psychiatrist's diagnosis in informing itself to make the finding that he suffered from a present severe emotional disturbance. That's what I heard her say. Which is what I heard, and I hear that as a concession because that is different from what the board policy required back in 1987 when Mr. Evers was under consideration. With respect to the record in this case, the state court record here, which you'll find referred to at page 39 of our excerpt, included the record submitted in a case by a state petitioner, Adams. The Adams record is full of all of the statements of Santos, Fox, the debates in the House and Senate about the change of the law in 1993. So with respect to the question of what was presented to the state court, I would submit that Mr. Evers was diligent in the state court and provided the state with the opportunity to rule on the policy issue the state simply chose not to. Could you give me the page number on that? ER 39 is where the state record exists, and it's referenced to the Adams case and incorporated into Everest all of the Adams exhibits. I mean, there were many cases coming up through the state system at the time, and they incorporated Adams, which had lots of the documentation. So he was diligent. And my only request with respect to the Rule 7 issue is if the court finds that to be dispositive, I would ask the court to permit supplemental briefing based on the Holland case. We don't believe it is dispositive. We believe that the state record contains enough and that we added very little. You can decide this case based on what was presented to the state court. If you think you need more, I think that the issue, as Ms. Alexander pointed out, is one of sufficient moment that additional briefing might be helpful. Okay. Thank you very much. Thank you very much. The case of Everest v. Zerniak is now submitted. Thank both of you for very useful arguments. I'm sure you both don't want to stick around to argue the rest of the cases on the calendar. The next case on the calendar is Allstate Insurance v. Breeden. Thank you.
judges: Goodwin, W. Fletcher, Tallman